[No. 29547. Department One. August 17, 1945.]

THE STATE OF WASHINGTON, *Respondent*, v. MERLIN COONEY, *Appellant*.[1]

[1]Reported in 161 P. (2d) 442.

*Edward A. Davis*, for appellant.

*Karl J. Grimm* (*Floyd A. Futter*, of counsel), for respondent.

BEALS, C. J.—Merlin Cooney, a member of the police force of the city of Pasco, was by information charged with the crime of asking for and receiving a bribe. To this information the defendant pleaded not guilty.

Count 1 of the amended information reads as follows:

"That the said Merlin Cooney in the County of Franklin, State of Washington, on the 30th day of June, 1944, did then and there being unlawfully and feloniously while being a duly appointed police officer of the City of Pasco and as such executing functions of a public office ask from Winfred Beecham a reward, to-wit one diamond ring of the value of approximately $300.00, upon an agreement or understanding that he the said Merlin Cooney upon receiving the same would neglect and violate an official duty by releasing the said Winfred Beecham from the custody of police officers of the City of Pasco; he the said Merlin Cooney knowing that the said Winfred Beecham was under arrest for carrying a concealed weapon."

Count 2 is identical save it charges that the accused received a reward instead of asking for one.

Upon the trial the jury returned a verdict of guilty as charged, and, after denial of the defendant's motion for a new trial, a judgment of guilty was signed and entered, imposing upon the defendant a sentence of confinement for not more than ten years in the state penitentiary.

From this judgment appellant has appealed, assigning error upon the court's denial of his motion to dismiss the action, which motion was interposed at the conclusion of the state's case, and also upon the court's denial of appellant's motion for a new trial.

Rem. Rev. Stat., § 2321 [P.P.C. § 118-59], defines the crime of asking or receiving a bribe. The pertinent portion of this section reads as follows:

"Every executive or administrative officer or person elected or appointed to an executive or administrative office who shall ask or receive, directly or indirectly, any compensation, gratuity or reward, or any promise thereof, upon an agreement or understanding that his vote, opinion or action upon any matter then pending, or which may by law be brought before him in his official capacity, shall be influenced thereby; . . . and every person who executes any of the functions of a public office not hereinbefore specified, . . . who shall ask or receive directly or indirectly, any compensation, gratuity or reward, or any promise thereof, upon an agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby, or that he will do or omit any act or proceeding or in any way neglect or violate any official duty, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars, or by both."

From the evidence it appears that during the month of June, 1944, Leslie A. Manker, Jack W. Montgomery, Leonard W. Scheel, and appellant were members of the police force of the city of Pasco, appellant being the senior of the four officers named in point of service. Early on the morning of June 30th, Officers Manker and Scheel arrested two colored men, Winfred Beecham and Louis Baker, for an offense against the laws against sale of intoxicating liquor. Beecham had displayed to Officer Montgomery, who brought about the arrest, a pistol which Beecham had upon his person.

Shortly after the arrival of the party at the police station, appellant appeared and apparently took charge of the situation. Some of the officers knew that Beecham had in his possession a diamond ring of some value (Beecham valued the ring at over three hundred dollars) and a watch. According to the evidence introduced by the state, appellant joined in an agreement that Beecham should be released from custody upon filing a fifty-dollar cash bond on the liquor charge, and that no charge would be made against him for carrying a pistol. Appellant and Officer Manker received from Beecham the ring and watch, and

later that day the pistol was returned to Beecham. Several days thereafter, appellant received from Beecham two receipts, one acknowledging receipt from appellant of thirty dollars for the diamond ring, the other acknowledging receipt from Manker of fifty dollars for the watch. According to the evidence, appellant paid Beecham the sum of thirty dollars.

Briefly stated, appellant's contention was that he knew nothing whatever about the diamond ring until after Beecham had been released on bail, when he offered to purchase the diamond; that he had the ring appraised and thereafter paid thirty dollars for it, admitting that he received the receipt which was received in evidence. It is not disputed that appellant was at the time referred to in the evidence a police officer of the city of Pasco.

■ This court has held that members of an organized police force are public officers within the meaning of the statute above referred to. *State v. Nick*, 66 Wash. 134, 119 Pac. 15; *State v. Worsham*, 154 Wash. 575, 283 Pac. 167.

■ In order to constitute the crime of bribery under the statute, it must appear that the act done by the accused was performed in connection with his official duty. *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989; *State v. Hart*, 136 Wash. 278, 239 Pac. 834; *State v. London*, 194 Wash. 458, 78 P. (2d) 548, 115 A. L. R. 1255.

■ Appellant argues that, under the rules laid down in the foregoing cases, in the case at bar the state was required to prove the nature of the official duties of a policeman of the city of Pasco. In this connection appellant contends that it was necessary for the state to prove by some city ordinance that a police officer had authority to release from custody a person under arrest for an offense against the law.

This contention is answered by the opinion of this court in the case of *State v. Nick, supra.*

Appellant admitted that he was at the time of the offense with which he was charged a police officer of the city. It is admitted that Beecham was arrested by officers other than appellant, and it is not denied that at the police sta-

tion appellant, being the senior officer present, took charge and agreed to make the proper notations on "arrest cards."

■ Appellant argues that appellant had no authority to release Beecham, and that in so doing he did not act in his official capacity. Clearly, from the evidence, the jury were entitled to find, and did find, that in connection with the release of Beecham appellant had violated his duties as a police officer. 47 Am. Jur. 846, Title Sheriffs, Police and Constables, § 35; *Bryant v. Bisbee,* 28 Ariz. 278, 237 Pac. 380, 44 A. L. R. 1495.

The statute pursuant to which appellant was charged, Rem. Rev. Stat., § 2321, *supra,* makes neglect and violation of an official duty a crime.

If in his dealings with Beecham appellant in any way violated the provisions of the statute, he is of course subject to prosecution. Whether or not he did something which, as a police officer, technically he had no right to do is immaterial so long as the act was not entirely beyond his official duties as such officer.

In 8 Am. Jur. 894, Bribery, § 14, the rule is laid down as follows:

"While the decisions on the subject are not altogether in harmony, by the great weight of authority, the giving or receiving of money, etc., for the purpose of influencing official conduct is not deprived of its criminal character by the fact that the action contemplated is not within the officer's jurisdiction. If he acts in his official capacity—and by this term is meant the doing of such acts as properly belong to the office and are intended by the officer to be official—the offense is complete. The validity or invalidity of the act to be done, or whether the officer or the body in question had or had not jurisdiction, is generally immaterial."

The supreme court of Wisconsin, in the case of *Williams v. State,* 178 Wis. 78, 189 N. W. 268, said:

"Any attempt to influence the official conduct of a public officer which has a tendency to swerve him from his clear line of duty strikes at the very foundation of the administration of justice."

■ From the evidence it appears beyond question that Beecham was in custody, having been arrested by one of the officers and taken to the police station, where appellant as senior officer present took charge of the situation. Thereafter, in connection with the matter under discussion, appellant was acting officially and because of his authority as a police officer. The fact that he abused his authority and did something which was in violation of his official duty does not exonerate him from prosecution under the statute against bribery.

Apparently this court has never been called on to decide whether, in order to support a verdict of guilty of bribery rendered against a law enforcement officer who released a person who had been placed under arrest, it must appear that the arrest was lawful, and that the officer charged had the authority to release the person arrested.

Upon this question there is some division of authority. We are convinced, however, that the weight of reason and authority supports the ruling of the trial court in the case at bar to the effect that the evidence introduced by the state was sufficient to support a verdict of guilty. 11 C. J. S. 850, 851, Title Bribery, § 2; *People v. Jackson,* 191 N. Y. 293, 84 N. E. 65, 15 L. R. A. (N. S.) 1173; *Moseley v. State,* 25 Tex. App. 515, 8 S. W. 652; *State v. Potts,* 78 Iowa 656, 43 N. W. 534, 5 L. R. A. 814; *People v. Mol,* 137 Mich. 692, 100 N. W. 913.

The trial court did not err in denying appellant's motion to dismiss the proceeding at the close of the state's case.

Appellant advances several reasons in support of his contention that the trial court erred in denying appellant's motion for a new trial.

This action was tried before a visiting judge, and it appears that in the office of the clerk of the court there were available to the jurors and other persons copies of a printed pamphlet concerning the respective duties of court and jury in the trial of civil and criminal proceedings. This pamphlet was printed over the name of the superior judge regularly elected for the county in which the action was tried. It also appears that copies of this pam-

546

phlet had been made available to members of the jury panel
who had been summoned at the opening of the jury term
of court at which appellant was tried.

■ It nowhere appears that any one of the jurors be-
fore whom appellant was tried ever saw the pamphlet, and
if some of them did read it, we find no basis supporting
appellant's argument that he was anywise prejudiced
thereby. *State v. Miller,* 90 Kan. 230, 133 Pac. 878, Ann.
Cas. 1915B, 818; 53 Am. Jur. 76, Trial, § 77.

■ Appellant makes no showing to the effect that he
did not know all about the pamphlet, its contents, and its
circulation prior to the entry of the verdict against him.
If he was fully advised as to the existence of the pamphlet
and deemed it objectionable, it was his duty to call the
matter to the attention of the court before, rather than
after, the rendition of the verdict. *Basil v. Pope,* 165 Wash.
212, 5 P. (2d) 329; *State v. Patrick,* 180 Wash. 56, 39 P.
(2d) 390; *Sun Life Assurance Co. of Canada v. Cushman,*
22 Wn. (2d) 930, 158 P. (2d) 101.

In support of his motion for a new trial, appellant filed,
among other matters, the affidavit of Charles E. Marvin,
who deposed that he was acquainted with one of the mem-
bers of the jury before which appellant was tried. Mr.
Marvin deposed that about a week prior to the trial he had
a conversation with this juror, who then stated that he
did not like appellant, the witness in his affidavit stating
his conclusion that the juror seemed very antagonistic
to appellant. Basing his contention upon Mr. Marvin's
affidavit, appellant argues that the trial court erred in
denying his motion for a new trial because of the fact
that the juror referred to was prejudiced against appellant
prior to the trial.

■ Upon his preliminary examination as a prospective
juror, it appeared that the juror in question was acquainted
with appellant, having known him for about twenty years.
To a question as to whether his acquaintance with appel-
lant or his family would weigh with the juror one way or
another upon the trial, a negative answer was returned.
Upon examination by appellant's counsel, the juror was

asked, "Do you know of any reason why you can't act as a fair and impartial juror?" to which he answered, "No"; whereupon appellant's counsel passed the juror for cause. There is no suggestion in the record that the juror was influenced in his verdict by any prejudice against appellant, and it must be assumed that the juror observed his oath and acted fairly and impartially throughout the case.

Appellant further argued in support of his motion for a new trial that from the record it appears that throughout the trial the court indulged in a continuous endeavor to convey to the jury the thought that the court "desired this man's conviction."

Appellant also contends that the court indulged in unlawful comments upon the evidence.

In his brief appellant states that there were many people present in the courtroom in the course of the trial; that these spectators were manifestly in sympathy with the prosecution; and that the jury must have observed these manifestations of ill will toward appellant.

■ Of course if the spectators openly manifested an unfriendly sentiment toward appellant, appellant's counsel should have called the matter to the attention of the court, asking that appropriate steps be taken to terminate such manifestations. It does not appear that this was done. The record does not support counsel's contention that the court indicated any prejudice against appellant or conducted the trial otherwise than in a fair and impartial manner.

Neither do we find any merit in appellant's contention that the trial court unlawfully commented on the evidence.

■ Finally appellant contends that the trial court erred in giving to the jury instruction No. 3. As the instruction complained of is not set forth in full in appellant's brief, this assignment of error cannot be considered. *State v. Severns*, 13 Wn. (2d) 542, 125 P. (2d) 659.

Finding no error in the record, the judgment appealed from is affirmed.

MILLARD, STEINERT, JEFFERS, and GRADY, JJ., concur.